BREEDING, APPELLANT, *v.* FIREMAN'S FUND AMERICAN LIFE INSURANCE COMPANY, APPELLEE.

(No. 9365—Decided August 15, 1985.)

*Marylee Gill Sambol,* for appellant.

*Pickrel, Schaeffer & Ebeling, Jon M. Rosemeyer* and *James F. Barnhart,* for appellee.

WOLFF, J. The appellant, Edward Breeding, appeals from the judgment of the common pleas court sustaining appellee *Fireman's Fund American Life Insurance Company's* ("Fireman's") motion for summary judgment, and overruling his motion for summary judgment.

He assigns as error the sustaining of Fireman's motion for summary judgment and the overruling of his motion for summary judgment.

Breeding's complaint alleged that Fireman's had violated R.C. 3917.06(E) and 3923.122(A), but Breeding has limited his appeal to whether the trial court correctly concluded that Fireman's had complied with R.C. 3923.122(A), which provides:

"Every policy of group sickness and accident insurance providing hospital, surgical, or medical expense coverage for other than specific diseases or accidents only, and delivered, issued for delivery, or renewed in this state on or after January 1, 1976, shall include a provision giving each insured the option to convert to *any of the individual policies* of hospital, surgical, or medical expense insurance then being issued by the insurer with benefit limits not to exceed those in effect under the group policy." (Emphasis added.)

The controversy is whether Fireman's issues more than one individual policy of hospital, surgical, or medical expense insurance.

From the affidavit in support of Fireman's motion for summary judgment, it is evident that Fireman's claims it issues only one *individual* policy of medical insurance in Ohio.

From the affidavits in support of Breeding's motion for summary judgment, it appears that in addition to the policy claimed by Fireman's to be its sole individual policy, Fireman's issues a "Mini Fund" policy, and that Fireman's sent a brochure about the Mini Fund policy to a lawyer associated with Breeding's counsel in response to that lawyer's phone call to Fireman's main business office and statement to one Kathy Fitzgerald of that office "that I wanted to purchase an individual policy of hospital and medical insurance."

Breeding claims the Mini Fund is an individual policy, and that Fireman's denied him the statutorily mandated "option to convert to *any* of the in-

dividual policies * * * issued by the insurer."

Fireman's claims the Mini Fund is a group policy, although, according to the affidavit of Kristeen Labutzke, Fireman's Assistant Vice President, Group Underwriting, it is "sold to *groups of one* or more employees" (emphasis added).

Breeding is unemployed.

Breeding argues that the Mini Fund is an individual policy because it does not meet the statutory definition of group insurance found at R.C. 3923.12(A):

"Group sickness and accident insurance is that form of sickness and accident insurance covering groups of *persons,* with or without one or more of their dependents and members of their immediate families, and issued upon one of the following bases:

"(1) Under a policy issued to an employer, who shall be deemed the policyholder, insuring *at least ten employees* of such employer, for the benefit of persons other than the employer;

"(2) Under a policy issued to an association, including a labor union, which has a constitution and bylaws and which has been organized and is maintained in good faith for purposes other than that of obtaining insurance, insuring *at least twenty-five members* of the association for the benefit of persons other than the association or its officers or trustees, as such;

"(3) Under a policy issued to any other *substantially similar group* which, in the discretion of the superintendent of insurance, *may be subject to the issuance* of a group sickness and accident policy;

"(4) Under a policy issued in accordance with section 3923.121 of the Revised Code." (Emphasis added.)

Breeding argues that a "group of one" is a contradiction in terms. Furthermore, he argues that the Mini Fund is not a third-party beneficiary arrangement that characterizes most group policies, and specifically characterizes the group insurance definitions at R.C. 3923.12(A)(1) and (2).

Fireman's argues that the Mini Fund qualifies as group insurance under R.C. 3923.12(A)(3). Utilizing descriptive material presented in the trial court, consisting of attachments 1 and 2 to the Labutzke affidavit, Fireman's points out that eligibility is extended to gainfully employed persons who work at least thirty hours per week, forty-eight weeks per year; that insureds have group numbers; that the Mini Fund provides for conversion to individual policies upon termination of employment; and that the Mini Fund plan is uniquely designed to provide group insurance to employed persons who would not otherwise qualify for a group plan because of minimum size, participation and contribution requirements.

Furthermore, Fireman's claims that because there is no evidence of disapproval by the Superintendent of Insurance of the Mini Fund pursuant to R.C. 3923.02, it follows that the Mini Fund is "group insurance" under 3923.12(A)(3).

The trial court issued a terse ruling finding that there was no genuine issue as to any material fact in regards to Fireman's compliance with its policy requirements and the statutory provisions contained in R.C. 3917.06 and 3923.122.

Implicit in the trial court's finding was the fact that the Mini Fund is a group policy.

The question on appeal is whether there was a material issue of fact upon which reasonable minds might disagree on this matter.

Unquestionably, the Mini Fund is promoted as group insurance. The materials before the trial court are replete with language describing the Mini Fund as group insurance. To be sure, the Mini Fund is available to "groups of one," but these groups of one

must be employed. While the Mini Fund provides for groups of one, the emphasis is on larger groups:

"Renewal premiums may be increased on any premium due date, but not until a participating *employer* [not employee] has participated under the policy for 12 consecutive months. (It is possible for an insured's premium to increase during the first 12 months that he is insured *if he joins the group* after the initial enrollment for that group.)" (Emphasis added.)

"Writing the Group(.) 1) Complete Mini Fund Application for Insurance. A. All applicants must be gainfully employed (working a minimum of 30 hours per week) * * * 2) Complete Mini Fund Employer Group Application. Must be signed by employer, or person authorized to purchase insurance for the firm, if not self-employed."

"CONVERSION: If employment terminates any covered individual who has been insured for the applicable time period set forth in the master policy may convert their [*sic*] insurance to individual policies, without medical examination and without interruption of protection, for Life and Medical Insurance Benefits (as offered on an individual basis by the Company) in accordance with the terms of the master policy."

Despite the evidence that the Mini Fund purports to be group insurance, there appears to us to be unresolved questions of material fact raised by the evidence before the trial court on whether the Mini Fund is group or individual insurance.

R.C. 3923.12(A) states that "[g]roup * * * insurance is that form of * * * insurance covering groups of *persons* * * *." (Emphasis added.) While R.C. 3923.12(A)(3) embraces policies issued to groups "substantially similar" to groups of at least ten employees (R.C. 3923.12[A][1]), or twenty-five association members (R.C. 3923.12[A][2]), it is

difficult for us to determine how a "group of one" can be reconciled with the plain meaning of the word "group," and the clear meaning of "group" as being more than one person found in R.C. 3923.12(A)(1) and (A)(2).

There was also evidence before the trial court that Fireman's sent a Mini Fund brochure to an attorney associated with Breeding's counsel in response to that attorney's statement that he wanted to purchase an individual policy. We are mindful of the fact that the Mini Fund, by its terms, is only available to employed persons, and that Breeding is unemployed. However, R.C. 3923.122 (A) does not limit the insurer's obligation to offering the insured the option to convert to any individual policies *for which he is eligible,* but requires that the insured be given the option to convert to any individual policy issued by the insurer.

We do not think the inaction of the Superintendent of Insurance — upon which no evidence was offered to the trial court — is dispositive of whether the Mini Fund is group insurance.

Because we believe there are material issues of fact on the question of whether the Mini Fund is a group or individual policy, we find the assignment of error, as it relates to the trial court's granting summary judgment in favor of Fireman's, well-taken; the judgment of the trial court is reversed and the cause is remanded to enable the trial court to conduct such proceedings as are necessary to resolve the material issues of fact. The assignment of error as it relates to the trial court's overruling Breeding's motion for summary judgment is overruled.

Other than the Mini Fund, the only other policy in evidence before the trial court was a policy which Fireman's claims to be the only individual health policy available.

Because the trial court may well conclude that the Mini Fund is group in-

surance, we must respond to Breeding's contention that Fireman's must offer him a choice of individual policies, and that the conversion policy that was offered to him is unenforceable.

R.C. 3923.122(A) provides that the insured be given the *option* to convert to *any* of the individual policies of medical insurance issued by the insurer.

While R.C. 3923.122(A) requires the insurer to provide the insured with the opportunity to choose from available individual policies, it does not require the insurer to have available more than one individual policy, if, in fact, the insurer issues no more than one individual policy.

Breeding also argues that the conversion policy is unenforceable because it offers inadequate coverage.

His group coverage apparently covered eighty percent of the first $3,000 of coverage expenses beyond deductible amounts, and one hundred percent of such expenses exceeding $3,000.

The conversion policy provides $25 per day toward hospitalization with a ninety-day maximum, a maximum miscellaneous expense allowance of $500, and a maximum surgical expense allowance of $300. For this coverage, Breeding would pay an $837 first-year premium for himself, his wife, and child, and a second-year premium of $607, with periodic upward adjustment due to increasing age.

He first claims that the conversion policy undermines the legislative intent of R.C. 3923.122.

However, the conversion policy does comply with the statute. Desirable as it might be for the legislature to provide that the conversion policy contain benefits comparable to those provided by the group insurance, the legislature has not seen fit to do so. For the court to engraft minimum levels of protection onto R.C. 3923.122 would amount to legislation by judicial fiat. The protec-

tion is not illusory, as Breeding contends. There is a definite level of protection in return for a particular premium. It may well be that the benefits/premium ratio is narrow, but that does not make the protection illusory.

Breeding also claims the conversion policy is unconscionable. We believe that reliance upon unconscionability as a basis for reversing the trial court is misplaced. Unconscionability may provide a defense to enforcement of an executed contract. Here, there is no executed contract but a claim that the conversion policy offered by Fireman's is grossly inadequate. Again, we reiterate that, despite the possible validity of this claim, it is the function of the legislature and not the courts to require that conversion policies provide minimum levels of coverage.

The judgment of the trial court will be reversed and this case will be remanded for proceeding as herein described.

*Judgment reversed*
*and cause remanded.*

BROGAN, P.J., and WILSON, J. concur.