Bruce **SCHNABEL**, Plaintiff,

v.

**PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY,** Defendant.

Civ. A. No. H–90–3948.

United States District Court, S.D. Texas, Houston Division.

April 3, 1992.

David W. Waddell, Hoover, Bax & Shearer, Houston, Tex., for plaintiff.

Maria Wyckoff Boyce, Baker & Botts, Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Plaintiff, Bruce Schnabel, seeks declaratory judgment that defendant, Philadelphia American Life Insurance Company (PALICO), wrongfully denied insurance coverage to which he was entitled under a conversion privilege in the Group Accident and Health Insurance Contract issued by PALICO to Schnabel's former employer, Schneider Construction Company. Pending before the Court are Defendant's Motion for Summary Judgment (Docket Entry No. 18) and Plaintiff's Motion for Partial Summary Judgment for Declaration Enforcing Benefits Due (Docket Entry No. 31). For the reasons discussed below, the Court will deny defendant's motion and grant plaintiff's motion.

### I. Background

While employed with Schneider, plaintiff was covered under Schneider's June 1,

1986, Group Accident and Health Contract with PALICO (the "Group Policy").[1] The Group Policy provided maximum lifetime benefits of $1,000,000 for each covered person.[2] Texas law requires group insurers to provide employees covered by their employers' group policies the option of either continuing their group coverage or converting it to individual coverage if their eligibility for group coverage terminates. Texas Insurance Code Ann. art. 3.51–6, § 1(d)(3) (Vernon's Supp.1992). In the "Conversion Privilege" of Schneider's Group Policy PALICO agreed to "issue an individual contract, in a form customarily issued by it, with benefits not greater than the benefits provided by this Contract" to any employee who became ineligible for group coverage.[3] The conversion privilege does not further define the individual contact to be issued, either by reference to a particular contract form or by an attachment to the Group Policy.

In June of 1986 PALICO introduced an Individual Accident and Health Contract, form 6119, which provided maximum lifetime benefits of $250,000.[4] On July 16, 1986, PALICO notified Schneider that the State of Texas had approved this new "medical conversion policy," that Schneider should replace its present supply of conversion application forms with the new attached application forms, and that if any employees wished to convert their insurance, they should complete one of the new application forms and submit it along with the premium payment prescribed in the form within 31 days of the expiration of their group coverage.[5] In 1987 PALICO sought and received approval from the Texas Board of Insurance to increase premium rates for employees who had converted their group coverage to individual coverage under policy form 6119.[6] PALICO informed the Texas Board of Insurance that policy form 6119 would not be available to persons whose group coverage terminated after October 31, 1987, and that the rate increases would apply only to persons who had converted their coverage before October 31, 1987.[7] Although PALICO notified everyone who had already converted from group coverage to individual coverage under policy form 6119 of the rate increases, PALICO failed to notify Schneider that it would not accept applications for policy form 6119 after October 31, 1987, or that Schneider should replace its applications for policy form 6119 with another conversion policy application form.[8]

Because of a terminal illness, plaintiff's employment with Schneider ended on December 8, 1989, although his coverage under Schneider's Group Policy continued through January 30, 1990.[9] Wishing to convert his group coverage to individual coverage, plaintiff completed the conversion application for policy 6119 on file with Schneider and hand delivered it to PALICO on February 28, 1990, together with a check for the premium required for $250,000 in maximum lifetime benefits shown on the form.[10] In response, PALICO sent plaintiff a letter dated February 28, 1990,

1. Defendant's Motion for Summary Judgment, Docket Entry No. 18, Exhibit B.

2. *Id.*, Exhibit B, third-from-last (unnumbered) page.

3. *Id.* at 1–2 and Exhibit B, p. 20.

4. Defendant's Motion for Summary Judgment, Docket Entry No. 18, Exhibit C, Deposition of Sandra Ramsey, PALICO's Vice–President of Policyholder Administration and Underwriting, at Deposition Exhibit No. 10.

5. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, Exhibit A, Affidavit of Bruce Schnabel, ¶ 5, and Exhibit B thereto.

6. Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 2.

7. Defendant's Motion for Summary Judgment, Docket Entry No. 18, Exhibit C, at Deposition Exhibit 18.

8. Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 17, and Exhibit C, p. 98; Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, p. 2, and Exhibit A, ¶¶ 3 and 7.

9. Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 3.

10. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, ¶ 5 and Exhibit A thereto.

stating that the conversion application he had submitted was an old one, and that to convert his group coverage to individual coverage he would have to complete a new application form.[11] The policy to which PALICO alleges plaintiff was entitled to convert (form 974) only provided for maximum lifetime benefits of $7,500.[12] Because plaintiff did not return an application for policy form 974 to PALICO, PALICO denied plaintiff's application for conversion coverage.[13]

On November 13, 1990, plaintiff filed suit in state court seeking declaratory judgment that he was entitled to an individual insurance policy providing maximum lifetime benefits of $250,000 in accordance with the application form that he submitted to PALICO.[14] On December 20, 1990, PALICO removed the suit to this Court alleging that plaintiff's claim was one for benefits under an ERISA plan.[15] In his First Amended Original Complaint (Docket Entry No. 25) plaintiff alleged causes of action for failure to disclose a material modification of the conversion benefits of the Group Policy, wrongful denial of benefits, failure to provide proper denial notices, failure to provide sufficient coverage pursuant to the Texas Insurance Code, Article 3.51–6, and arbitrary and capricious conduct. In addition to attorneys' fees and costs, the relief sought by plaintiff under all causes of action was payment of the benefits he would have been due under the conversion policy for which he applied on February 28, 1990, and for "such other and further relief to which he may be justly entitled."

## II. *Pending Motions for Summary Judgment*

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles the movant to judgment. Fed. R.Civ.P. 56(c); *Thomas v. Harris County,* 784 F.2d 648, 651 (5th Cir.1986). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the moving party has pointed out the absence of evidence supporting the nonmoving party's case, the nonmoving party's failure to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue as to a material fact exists. *Saunders v. Michelin Tire Corp.,* 942 F.2d 299, 301 (5th Cir.1991). Rule 56(c) requires the nonmoving party to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, or admissions on file that specific facts exist over which there is a genuine issue for trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

In its Motion for Summary Judgment PALICO argues that the only conversion policy it customarily issued in February of 1990 when plaintiff attempted to exercise his conversion privilege was that described on policy form 974 ($7,500 maximum lifetime benefits), and that because plaintiff failed to submit an application for policy form 974, PALICO is entitled to summary judgment that plaintiff failed to satisfy the requirements for exercising his conversion

---

**11.** *Id.* at ¶ 7 and Exhibit C thereto; Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 2–3, and Exhibit C, at deposition Exhibit 14.

**12.** Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, p. 2, ¶ 4; Defendant's Motion for Summary Judgment, Docket Entry No. 18, Exhibit C, pp. 82–83, 90–92, and deposition Exhibits 9 and 10; and Exhibit D, Affidavit of Sandra Ramsey, pp. 1–2.

**13.** Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, p. 2, ¶ 3; Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 3.

**14.** Plaintiff's Original Petition in Cause Number 90–061010, Attached to Defendant's Notice of Removal, Docket Entry No. 1.

**15.** Defendant's Notice of Removal, Docket Entry No. 1, p. 2.

privilege. Alternatively, PALICO argues that it is entitled to summary judgment that the $7,500 in lifetime maximum benefits offered under form 974 is the only coverage to which plaintiff is entitled.[16] In his Motion for Partial Summary Judgment for Declaration Enforcing Benefits Due plaintiff argues that because he satisfied the requirements for exercising his conversion privilege, he is entitled to declaratory judgment that PALICO wrongfully denied his application for conversion coverage. Plaintiff also argues that because PALICO used general, unrestricted language to describe the conversion privilege in the Group Policy, he is entitled to declaratory judgment that PALICO obligated itself "to provide the same benefits in its conversion policy as those afforded in the group policy."[17] In addressing these motions, the Court must determine whether plaintiff satisfied the requirements for exercising his conversion privilege and, if so, what level of coverage PALICO obligated itself to provide.

A. *Did plaintiff satisfy the requirements for exercising his conversion privilege?*

▊ Texas law requires group insurers to provide beneficiaries who have been continuously insured for a period of three consecutive months the option of either continuing their group coverage or converting their group coverage to individual coverage if their eligibility for group coverage terminates. Texas Insurance Code Ann. art. 3.51–6, § 1(d)(3) (Vernon's Supp.1992). Coverage under an individual policy must be provided "without evidence of insurability if written application and payment of the first premium is made within 31 days after such termination." Texas Insurance Code Ann. art. 3.51–6, § 1(d)(3)(A)(i) (Vernon's Supp.1992).

Plaintiff argues that he satisfied the requirements for converting his group coverage to individual coverage by completing and submitting to PALICO the application for policy form 6119 contained in his employer's files together with the requisite premium on the last day of the statutory period, February 28, 1990. PALICO argues that plaintiff is not entitled to any conversion coverage because he submitted an application for an "old" policy (form 6119) providing for maximum lifetime benefits of $250,000, and that when requested to complete and submit an application for a "new" policy (form 974) providing for maximum lifetime benefits of $7,500, plaintiff refused to do so. PALICO does not dispute that plaintiff was qualified to exercise the conversion privilege or that he completed a written application and submitted it together with payment of the first premium within the requisite period. Indeed, PALICO states:

> If Schnabel had completed [the new] application for policy form 974 which was customarily issued by PALICO in February 1990, Schnabel's conversion to the individual policy available to him would have been automatic.[18]

The Court is not persuaded by PALICO's argument that it is not obliged to provide plaintiff conversion coverage because his written application was submitted on an old form.[19] Because plaintiff exercised his option to convert by submitting an application together with the requisite premium payment within the period prescribed for doing so, he is entitled to summary judgment on this issue.

B. *Which level of conversion coverage did PALICO obligate itself to provide to plaintiff?*

Alternatively, PALICO argues that if plaintiff is entitled to some conversion coverage, that coverage is limited to the $7,500 in maximum lifetime benefits available un-

---

**16.** Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 6–7; Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 29, pp. 10–11.

**17.** Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, ¶¶ 5–8 and 13.

**18.** Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 16.

**19.** *Id.* at 18–19.

der policy form 974. PALICO argues that neither the statutory requirement that it provide a conversion option nor the language in the Group Policy imposed a duty to provide a specific, or minimum, level of coverage to beneficiaries under the Group Policy who exercised their conversion privilege. PALICO says that it has no *statutory* duty to provide a minimum level of coverage because Texas has no statutorily established minimum standards for conversion policies, and that it has no *contractual* duty to provide a minimum level of coverage because the conversion privilege in the Group Policy created no obligation to provide a minimum level of benefits. According to PALICO, the conversion privilege in the Group Policy only obligated it to provide plaintiff the conversion policy that it "customarily issued" when plaintiff attempted to exercise that privilege in February of 1990—a policy which PALICO asserts provided maximum lifetime benefits of $7,500. Plaintiff argues that the general language chosen by PALICO to express the conversion privilege in the Group Policy imposed a contractual duty on PALICO to provide plaintiff with conversion coverage no less advantageous than the $1,000,000 maximum lifetime benefits provided under the Group Policy.

1. *Does PALICO have a statutory duty to provide a specific, or minimum, level of coverage under the terms of its conversion privilege?*

■ The Texas Legislature has directed the Texas Board of Insurance to "issue rules and regulations to establish minimum standards for benefits" offered under conversion policies. Texas Insurance Code Ann. art. 3.51–6 § 1(d)(3)(A)(ii) (Vernon's Supp.1992). Because the Texas Board of Insurance has not yet issued rules and regulations applicable to Article 3.51–6, PALICO argues that it has no statutory duty to provide a specific, or minimum, level of coverage under its conversion option. Citing *Breeding v. Fireman's Fund American Life Ins. Co.*, 27 Ohio App.3d 81, 499 N.E.2d 890, 894 (1986), PALICO argues that this Court lacks authority to determine that a conversion policy providing for maximum lifetime benefits of $7,500 fails to meet a statutorily established minimum standard because such a determination would amount to legislation by judicial fiat. Plaintiff argues that PALICO is not entitled to summary judgment on this basis because a conversion policy providing for maximum lifetime benefits of $7,500 fails to meet the minimum standards for conversion coverage established by Article 3.51–6 of the Texas Insurance Code.

PALICO is mistaken in arguing that Texas fails to prescribe minimum standards for conversion policies. The Texas Insurance Code states:

> The insurer's standards must bear some reasonable relationship to actual health care costs in the area in which the insured lives at the time of conversion and must be filed with the commissioner of insurance prior to their use in denying coverage. Texas Insurance Code Ann. art. 3.51–6, § 1(d)(3)(A)(ii).

If the conversion policy offered to plaintiff by PALICO (form 974) failed to provide for coverage bearing some reasonable relation to actual health care costs in the area in which plaintiff lived at the time of conversion, or if the policy had not been filed with the commissioner of insurance before it was offered to plaintiff, the conversion policy would not meet the statutorily established minimum standards for conversion policies in Texas. Because PALICO has failed to offer any summary judgment evidence that policy form 974 meets either of these standards, PALICO is not entitled to summary judgment that the conversion policy offered to plaintiff met the Texas statutory requirements for a conversion policy. Moreover, PALICO makes too much of this issue. Even were PALICO successful on this argument, it would gain little since a finding that PALICO's new policy satisfied a statutory *minimum* would not preclude plaintiff from establishing that PALICO was contractually obligated to provide greater benefits.

2. *Does PALICO have a contractual duty to provide a specific, or minimum, level of coverage under the terms of its conversion privilege?*

The conversion privilege of Schneider's Group Policy obligated PALICO to "issue

an individual contract, in a form customarily issued by it, with benefits not greater than the benefits provided by the [Group] Contract".[20] PALICO argues that this language only obligated it to offer plaintiff the conversion contract that it customarily issued when plaintiff attempted to convert in February of 1990. PALICO states that although it once issued a conversion contract (form 6119) providing maximum lifetime benefits of $250,000,[21] it stopped offering that policy in October of 1987, and in February of 1990 it customarily issued only a conversion contract (form 974) providing maximum lifetime benefits of $7,500.[22] PALICO therefore concludes that it is entitled to summary judgment that the only conversion policy available to plaintiff under the conversion privilege of the Group Policy provided maximum lifetime benefits of $7,500. Alternatively, PALICO argues that it is entitled to summary judgment that it had no contractual duty to provide any minimum level of coverage because the conversion privilege in the Group Policy did

> not contain any statement which could conceivably be read as creating an obligation on the part of PALICO to provide conversion benefits at any specific level of coverage.[23]

Although the factual underpinnings of PALICO's arguments are correct, for the reasons explained below, they do not lead to the results PALICO urges the Court to reach.

Relying principally on *Baker v. Washington National Ins. Co.*, 823 F.2d 156 (5th Cir.1987), plaintiff argues that the general language used to express the conversion privilege in the Group Policy entitles plaintiff to benefits no less advantageous than the $1,000,000 lifetime maximum provided by the Group Policy.[24] In *Baker* the Court rejected Washington National's argument that a promise to "issue its then current conversion policy" unambiguously gave it the power to control the coverage offered. Like PALICO's commitment to plaintiff, Washington National's commitment to convert the Bakers' group coverage to individual coverage was expressed in broad general language. Neither the form nor the content of the conversion policy to be issued by Washington National was identified by attachment, reference, or description. Applying general principles of contract construction, the Fifth Circuit held:

> [I]f a company includes an undertaking to offer a conversion policy and its promise is no more definite than that it will issue an undisclosed, undefined form of conversion policy, it is bound to furnish at least one that is no less advantageous to the insured than the coverage it agrees to convert.

823 F.2d at 159.

PALICO attempts to distinguish *Baker* because it was decided under Mississippi law. However, the only reference to Mississippi law in *Baker* cites a general principle of insurance contract construction that fully accords with Texas law: "[I]n any insurance contract, unclear and ambiguous language will be construed in favor of the insured." *Baker*, 823 F.2d at 158, *quoting Government Employees Ins. Co. v. Brown*, 446 So.2d 1002, 1006 (Miss.1984). In Texas, ordinary principles of contract construction are used to interpret insurance policies and the extent of coverage is determined by the intentions of the parties, as reflected by the words of the policy. *Blaylock v. American Guarantee Bank Liability Insurance Co.*, 632 S.W.2d 719, 721 (Tex.1982), *citing Continental Casualty Co. v. Warren*, 152 Tex. 164, 254 S.W.2d 762, 763 (1953). An unambiguous contract

20. Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 1–2, and Exhibit B, p. 20.

21. Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 2–3, and Exhibit C at Deposition Exhibit 10.

22. Defendant's Motion for Summary Judgment, Docket Entry No. 18, pp. 6–7; Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 29, pp. 10–11.

23. Defendant's Motion for Summary Judgment, Docket Entry No. 18, p. 14.

24. Plaintiff's Motion for Partial Summary Judgment, Docket Entry No. 31, pp. 3–4, ¶¶ 5–8.

will be construed as written. *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex.1981). However, because the language of an insurance contract is normally chosen by the insurer, when the language is ambiguous, that is, susceptible to more than one interpretation, the court must adopt the construction urged by the insured. *National Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991); *citing Barnett v. Aetna Life Insurance Co.*, 723 S.W.2d 663, 666 (Tex.1987); *Glover v. National Insurance Underwriters*, 545 S.W.2d 755, 761 (Tex.1977). Whether a contract term is ambiguous is a question of law. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). An issue of fact is created only if the proper interpretation remains uncertain after the court applies the pertinent rules of construction. *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex. 1979).

In *Baker* the district court "looked to precedent to determine whether the term 'conversion' had an ordinary or commonly understood meaning." 823 F.2d at 158. In concluding that the ordinary meaning of a right to "convert" was the right to "continue" the basic coverage in the controlling policy, the district court relied on the construction of "conversion" in *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924), and *Moore v. John Hancock Mutual Life Ins. Co.*, 436 F.2d 823 (5th Cir.1971). In *Dunken* the Supreme Court determined that a subsequent contract made in pursuance of an unrestricted provision of an earlier one is to be regarded as a continuation of the first. 266 U.S. at 399–400, 45 S.Ct. at 132–133. In *Moore* the Fifth Circuit determined that absent any stated restriction, the insurer's use of general language agreeing to convert imported a promise to continue the basic coverage. 436 F.2d at 830–831.

PALICO attempts to distinguish *Moore* because it arose in Florida and was governed by Florida statutes. In *Baker* the Fifth Circuit emphasized, however, that neither the Florida "statute nor any Florida rules of construction affected *Moore*'s

holding that the ordinary meaning of the right of 'conversion' was a right to 'continue' the basic coverage in another type of policy." 823 F.2d at 158. The Fifth Circuit held that Washington National's undertaking to issue a conversion policy it chose to call its "then current conversion policy" was an empty promise if it were not tied by common understanding or express language to some definite level of coverage. *Id.* The Fifth Circuit agreed with the district court that a bald promise of "conversion" meant "continuation," and held that to find otherwise would make the language "'then current conversion policy' ... unclear if not wholly ambiguous in setting the nature and extent of coverage promised to be provided." *Baker*, 823 F.2d at 158.

The holding and analysis in *Baker* comport with Texas law that ambiguous language in insurance contracts is to be construed in favor of the insured, and that issues of fact are created only if the proper interpretation of ambiguous language remains uncertain after pertinent rules of construction are applied. Because the conversion privilege in PALICO's policy is virtually identical to the one construed in *Baker* and the law applied in *Baker* is identical to Texas law, this Court finds that the analysis and holding of *Baker* are dispositive in the present case. The Court concludes that PALICO's unrestricted promise "to issue an individual contract, in a form customarily issued by it, with benefits not greater than the benefits provided by this Contract" created a contractual duty to provide coverage no less advantageous than that provided in the Group Policy issued to Schneider.

The fix in which this result leaves PALICO is one of its own making. As the Fifth Circuit observed in *Baker*, insurance companies are free to restrict the form and content of their conversion policies, and restrictions can be imposed by attaching the conversion policy to the controlling group policy, by referring to a form of conversion policy on file with the employer or the state insurance authority, or by delineating what particular risks would be covered or excluded. *Baker*, 823 F.2d at 159. (Indeed, the "old" conversion policy

(form 6119) originally sought by plaintiff could arguably have been the kind of restrictive attachment to the Schneider Group Policy envisioned in *Baker* if PALICO had taken any of the steps mentioned in *Baker* to tie the conversion privilege in the Schneider Group Policy to that, or some other, conversion policy form.) Because PALICO withdrew the only conversion policy it had told Schneider would be issued to its employees (form 6119), but failed to provide either Schneider or its employees with any description of the conversion policy to be issued instead, the terms and conditions of the conversion policy that it customarily issued in February of 1990 were not identified or described in a manner that arguably could have limited the general language of the Group Policy's ambiguous promise to convert. Absent any such limitation, PALICO's use of general language to describe the conversion privilege offered under Schneider's Group Policy created a contractual duty to continue the basic coverage offered in the policy. *Baker*, 823 F.2d at 158.[25]

## III. *Conclusion and Order*

Because plaintiff was qualified to exercise the conversion privilege in his employer's Group Policy, and because he completed a written application and submitted it to PALICO together with payment of the first premium within the 31–day period prescribed for exercising that privilege, plaintiff satisfied the statutory and contractual requirements for the conversion and is entitled to summary judgment that PALICO wrongfully denied him conversion coverage. Because PALICO failed to limit the conversion coverage provided under the Group Policy, or to describe to plaintiff or his employer the terms of the conversion policy to be issued in lieu of the Group

Policy, PALICO's contractual promise "to issue an individual contract, in a form customarily issued by it," was ambiguous. Because ambiguities in insurance contracts are construed against the drafter, and because there is no issue of fact as to the proper interpretation once the Court applies the pertinent rules of construction, plaintiff is entitled to summary judgment that PALICO's use of general, unrestricted language agreeing to convert group to individual coverage imported a promise to continue the coverage provided by the Group Policy. Accordingly, PALICO's Motion for Summary Judgment is DENIED and Plaintiff's Motion for Partial Summary Judgment is GRANTED. The Court will enter a judgment declaring that plaintiff is entitled to conversion coverage equalling that provided by the Group Policy, which provides for maximum lifetime benefits of $1,000,000.

Although Plaintiff's Motion for Partial Summary Judgment does not address his other causes of action, by granting his motion, the Court has afforded plaintiff all of the relief he could receive under all or any of his other causes of action. Accordingly, plaintiff's remaining causes of action are DISMISSED *sua sponte* without prejudice to being reinstated should the final judgment to be entered be reversed and remanded. The only issue remaining before the Court are the level of premium payments due PALICO, and plaintiff's claims for attorneys' fees and costs of court. If the parties are unable to file a stipulation on these issues by April 20, 1992, the Court will conduct an evidentiary hearing on April 24, 1992, at 4:30 p.m. in Court Room 9–B, 9th Floor, United States Courthouse, 515 Rusk, Houston, Texas. Counsel are requested to submit a proposed Final Judg-

**25.** In a March 31, 1992, letter to the Court PALICO urged the Court to deny the relief sought in plaintiff's Motion for Partial Summary Judgment for benefits equalling those provided by the Group Policy because this relief was not supported by his pleadings. The Court is not persuaded by this belated argument for three reasons. First, the prayer for relief in plaintiff's First Amended Original Complaint is broad enough to cover this relief. Second, and

more importantly, plaintiff's request for this relief is no surprise to PALICO; the parties have briefed and argued it. Finally, the Court's remedy is not circumscribed by the parties' pleadings. Fed.R.Civ.P. 54(c) states:

[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings.

ment, agreed as to form, to Chambers by April 20, 1992.