**AIU INSURANCE COMPANY**

v.

**MALLAY CORPORATION.**

**Civil Action No. G–95–485.**

United States District Court,
S.D. Texas,
Galveston Division.

Oct. 3, 1996.

Rand Patrick Nolen, Tucker Hendryx et al., Houston, TX, for AIU Insurance Company, plaintiff.

Robert L. Ketchand, Short & Ketchand, Houston, TX, for Mallay Corporation, defendant.

Nicholas J. Lanza, Bush & McCaffrey, Houston, TX, for Bowen, Miclette, Descant & Britt, Incorporated, third-party defendant.

## ORDER

KENT, District Judge.

This is a declaratory judgment action in which Plaintiff AIU Insurance Company ("AIU") seeks the declaration of its duties and obligations to Defendant Mallay Corporation ("Mallay") pursuant to an insurance contract entered into by both parties. Now before the Court is Plaintiff's Motion for Summary Judgment of April 4, 1996 and Defendant's Motion for Partial Summary Judgment of the same date. For the reasons stated below, Plaintiff's Motion is **GRANTED** and Defendant's Motion is **DENIED**.

### I. Factual Background

Mallay is a machine tool company located in Brazoria County whose largest customer historically has been Dow Chemical ("Dow") As part of its business, Mallay would mill and grind parts used by Dow in its chemical processing plant. In early 1995, Mallay received a turbine from Dow that required burnishing so that it would meet precise specifications. On February 7, 1995, an employee of Mallay was engaged in the process of burnishing the turbine. The employee had burnished one end of the turbine and was turning it around to burnish the other end. The turbine was lowered into place by an overhead crane and set into the lathe and

locked in with the jaws. After it was set into the lathe, however, the turbine rolled about a half a turn and fell out of the lathe jaws. The turbine fell three to four inches and was so damaged that it could not be used without significant further repairs. At the time of the incident, the lathe was in neutral and was not turned on.

As a result of the fall, the turbine required repairs that Mallay was not capable of making, and the turbine had to be shipped to New York state for repairs. The cost of repair was about $91,000.00. Additionally, Dow claimed that it suffered economic losses of $2.9 million as a result of the damage to the turbine and looked to Mallay for payment of these economic losses as well as for reimbursement of the cost of repairing the turbine.

At the time of the incident, Mallay had in effect an insurance agreement with AIU (policy number TCP208–28–51), which provided for commercial general liability ("CGL") coverage and property coverage. Mallay asserted a claim against AIU based on this policy for coverage of both the cost of repairing the turbine and the consequential damages allegedly suffered by Dow. AIU responded with a series of reservation of rights letters in which it highlighted policy language and exclusions that it believed were applicable to the incident. As a result, Mallay was unsure whether its policy would cover the incident and was unable to assure Dow that it had insurance coverage for the damage to the turbine and the consequential economic losses. Because of this uncertainty, Mallay felt compelled to reach a resolution of the problem with Dow. This resolution consisted of an agreement with Dow in which Mallay agreed to pay the $91,000.00 in a note form to Dow and Dow agreed to release all claims against Mallay.

AIU ultimately conducted an investigation at the Mallay premises in July 1995 and consequently denied all coverage for the incident except for limited property coverage of a maximum amount of $2500.00 under a liberalization clause in the property coverage portion of the policy. AIU then initiated this action for a declaratory judgment regarding the insurance coverage issues, and Mallay

asserted various counterclaims against AIU and added third-party claims against their insurance agents. Both AIU and Mallay moved for summary judgment on the issue of coverage, and it is those motions that the Court herein addresses.

*II. Summary Judgment Standard*

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Issues of material fact are genuine only if they require resolution by a trier of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In other words, the Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *see also* Fed.R.Civ.P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). To meet this burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (quoting Fed.R.Civ.P. 56(e)). Summary judgment should be granted only if the evidence indicates that a reasonable fact-finder could not find in favor of the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

### III. Analysis

It is a well-established rule of Texas law that insurance policies are contracts and so are generally subject to the same rules of construction as other contracts. *State Farm Fire & Casualty Co. v. Reed*, 873 S.W.2d 698, 699 (Tex.1993); *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 665 (Tex.1987). If an insurance policy is susceptible to more than one reasonable interpretation, it is patently ambiguous and should be construed against the insurer and liberally in favor of the insured. *State Farm*, 873 S.W.2d at 699; *Barnett*, 723 S.W.2d at 665; *see also Schnabel v. Philadelphia Am. Life Ins. Co.*, 795 F.Supp. 816, 823 (S.D.Tex.1992) ("[B]ecause the language of an insurance contract is normally chosen by the insurer, when the language is ambiguous ... the court must adopt the construction urged by the insured.").

This rule of construction does not apply, however, when the insurance contract is expressed in plain and unambiguous language and is susceptible of only one reasonable interpretation. *State Farm*, 873 S.W.2d at 699; *Barnett*, 723 S.W.2d at 665–66. "When there is no ambiguity, it is the court's duty to give the words used their plain meaning." *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex.1984) (citing *Transport Ins. Co v. Standard Oil Co.*, 337 S.W.2d 284 (1960)). Giving those words their plain meaning, the court must enforce the insurance contract as written and may not vary its terms. *State Farm*, 873 S.W.2d at 699; *see National Union Fire Ins. Co. v. CNA Ins. Cos.*, 28 F.3d 29, 32 (5th Cir.1994) ("When the terms of an insurance policy are plain, definite, and unambiguous, a court may not vary those terms." (citing *Royal Indemnity Co. v. Marshall*, 388 S.W.2d 176, 181 (Tex.1965))), *cert. denied*, —— U.S. ——, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995); *Schnabel*, 795 F.Supp. at 822–23 ("An unambiguous contract will be construed as written." (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 728 (Tex.1981))). Thus the Court must determine whether the policy at issue is ambiguous and whether it provides coverage for the incident in question.

As Mallay states in its Reply to AIU's Motion for Summary Judgment, "this is a case of application of undisputed facts to the policies in question." (Reply of Mallay Corporation to AIU's Motion for Summary Judgment and Brief, at 1). Mallay contends that the direct damage to the turbine is covered under the property coverage form of the policy and that Dow's economic losses are covered under the CGL portion of the policy. In contrast, AIU contends that these losses are specifically excluded under both the CGL coverage form and the property coverage form. AIU acknowledges, however, that a liberalization clause in the property coverage form allows for an extension of coverage for the incident but that such coverage is limited to $2500.00. In order to resolve this dispute, the Court will address each type of coverage in turn.

### A. The Commercial General Liability Coverage Form

■ The insurance agreement entered into by Mallay and AIU provided for liability coverage via a standard CGL coverage form. Under this CGL coverage, AIU was obligated to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the insurance applies." (Policy TCP208–28–501, CGL Coverage Form Section I.1.a). This broad grant of coverage, however, is subject to many exclusions. Relevant to this case is exclusion j(4), which excludes coverage for " 'Property damage' to Personal property in the care, custody or control of the insured." (Policy TCP208–28–501, CGL Coverage Form Section I.2.j.(4)). "Property damage" is defined under the policy to mean "physical injury to tangible property, including all resulting loss of use of that property" or "loss of use of tangible property that is not physically injured." (Policy TCP208–28–501, CGL Coverage Form Section V.15). AIU argues that this exclusion, coupled with the definition of "property damage," is directly applicable to the incident in question and specifically precludes liability coverage for all damage to the turbine. The Court agrees. At the time of the incident, the turbine was tangible personal property in the care, custody or control of Mallay and suffered physical injury. Thus, under the plain and unambiguous language of the poli-

cy, the direct damage to the turbine is excluded from coverage under the CGL form. To its credit, Mallay does not dispute this finding that the direct damage to the turbine and the repairs to the turbine are not covered under the CGL coverage form. (See Defendant's Motion for Partial Summary Judgment, at 9–10). Mallay claims, however, that while the direct damage to the turbine is excluded from coverage, the consequential economic losses that Dow allegedly suffered are expressly recoverable under the CGL portion of the policy.

Mallay advances several arguments to support its contention that liability for Dow's economic losses is covered under the CGL coverage form. Central to Mallay's arguments is the contention that as a result of the damage to the turbine, Dow lost the use of its plant. The CGL form provides coverage for "sums that the insured becomes legally obligated to pay as damages because of ... 'property damage,'" (Policy TCP208–28–501, CGL Coverage Form Section I.1.a), and Mallay argues that Dow's loss of use of its plant is property damage for which coverage is afforded. As stated above, "property damage" is defined to mean "loss of use of tangible property that is not physically injured." (Policy TCP208–28–501, CGL Coverage Form Section V.15). Mallay argues that Dow's loss of use of its plant fits this definition of "property damage" because Dow lost the use of its plant, which is tangible property that was not physically injured. Moreover, Mallay argues that exclusion j(4), which excludes coverage for property damage to "Personal property in the care, custody or control of the insured," (Policy TCP208–501, CGL Coverage Form Section I.2.j.(4)), is not applicable to exclude coverage for Dow's loss of use of its plant because the plant was not in the care, custody or control of Mallay.

The Court is unconvinced by these arguments because it finds the premise unpersuasive. The Court finds that the property which Dow lost the use of was the turbine, not its plant. It was the loss of the use of the turbine that caused Dow to incur its alleged economic losses. If Mallay were entitled to coverage for the consequential damages, it would be under a theory that they resulted from the loss of use of the turbine, not the plant. The Court finds, however, that consequential damages under these circumstances are specifically excluded under the CGL coverage form. Exclusion j(4) excludes coverage for property damage to property in the care, custody or control of the insured, and "property damage" is defined to mean "physical injury to tangible property, *including all resulting loss of use of that property.*" (Policy TCP208–28–501, CGL Coverage Form Sections I.2.j.(4) & V.15) (emphasis added). According to the plain and unambiguous language of this exclusion and definition, the Court finds that liability for any resulting loss of use of the turbine is specifically excluded under the CGL coverage form because the turbine was physically injured, resulting in a loss of use, while in the care, custody or control of Mallay. Therefore, Dow's economic losses incurred as a result of the loss of use of the turbine are not recoverable by Mallay under the policy. The Court concludes that the CGL portion of the policy affords Mallay no coverage for the direct damage to the turbine nor Dow's alleged resulting economic losses.

## B. The Property Coverage Form

■ . In addition to CGL coverage, Mallay's policy with AIU afforded Mallay property coverage pursuant to a standard commercial property policy and several extended coverage endorsements appended thereto. Both Mallay and AIU agree that the damage to the turbine is governed by a Special Extended Coverage Endorsement attached to the standard policy. This endorsement extends the standard policy "to insure against all other risks of direct physical loss." (TCP208–28–501, Special Extended Coverage Endorsement Section I). This broad grant of coverage, however, is subject to numerous exclusions. Specifically, the "[policy does not insure against loss [a]ny property undergoing alterations, repairs, installations or servicing, including materials and supplies therefor, if directly attributable to the operations or work being performed thereon." (TCP208–28–501, Special Extended Coverage Endorsement Section IV.V).

AIU argues that this exclusion is directly applicable to the incident and precludes cov-

erage for the damage to the turbine. Mallay, however, argues that the exclusion does not apply because the damage to the turbine is not directly attributable to operations or work being performed on the turbine. Underlying this argument is Mallay's claim that no work was being performed at the time of the damage. Mallay claims that the turbine was not being worked on at the time it was damaged because the lathe was not on; rather, Mallay argues, the turbine was merely being loaded into the lathe, which would not qualify as being worked on. The Court commends counsel for the audacious creativity of this surreal argument but finds that the language of this exclusion is unambiguous, and it therefore must give the words their plain meaning. *Puckett*, 678 S.W.2d at 938. To do otherwise would permit an abrogation of common sense.

Giving the words their plain meaning, it is clear to this Court that the turbine was being worked on and undergoing repairs at the time of the damage. The lathe operator had burnished one end of the turbine and was turning it around to burnish the other end. (See Affidavit of Ron Edwards, at 10). In the Court's view, the process of burnishing was still underway, and the turning of the turbine was merely a step in that process. The fact that the lathe was not turned on at the time is not dispositive. Arguing that the turbine was not being worked on because the lathe was not turned on and milling the turbine is analogous to arguing that a person is not "painting" unless the brush is actually touching the wall. Every dip into the paint can would terminate the painting, only to have it resume again once the brush touched the wall. As shown by the analogy, this interpretation stretches beyond the plain meaning and common understanding of the words. Under the plain meaning of the words, the Court finds that the turbine was being worked on and that the damage was directly attributable to that work. Therefore, the damage to the turbine is excluded from coverage under the property policy form and the attached extended coverage endorsement.

## C. The Liberalization Clause and the ISO

■ While the damage to the turbine is not covered under the original terms of the property coverage form, the form contains a liberalization clause that allows for extension of coverage in certain circumstances. The liberalization clause provides:

If during the period that insurance is in force under this policy, or within forty-five (45) days prior to the inception thereof, the State Board of Insurance prescribes for general use more liberal forms, endorsements, rules or regulations by which this policy could be extended or broadened by endorsement or substitution of forms without additional premium charge, then such extended or broadened insurance shall be to the benefit of the insured hereunder as though such endorsement or substitution of form had been made. (TCP208–28–501, Texas Standard Policy Section II).

In August 1994, the Texas State Board of Insurance approved the use of Insurance Service Organization ("ISO") form CP 00 10 10 91, the Building and Personal Property Coverage Form, which applies to commercial businesses. The ISO form provides coverage for "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (ISO Building and Personal Property Coverage Form, Section A). "Covered Property" means types of property listed on the ISO form "for which a Limit of Insurance is shown in the Declarations." (ISO Building and Personal Property Coverage Form, Section A.1). Listed under "Covered Property" is "Personal Property of Others that is: (1) In your care, custody or control, and (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises." (ISO Building and Personal Property Coverage Form, Section A.1.c).

Mallay argues that this provision provides coverage for damage to the turbine because the turbine was personal property of others in its care, custody or control. AIU claims, however, that this provision cannot provide coverage to Mallay because a Limit of Insur-

ance for personal property of others was not expressed in the Declarations of the original property coverage policy. The Court agrees with AIU. The Court finds no Limit of Insurance expressed for personal property of others in the Declarations. Consequently, this type of property does not meet the definition of "covered property" under the ISO form, and coverage .cannot be afforded to property that is not covered by the policy.

■ Also listed under "covered property" is "Business Personal Property located in or on the building described in the Declarations," which consists of, among other things, "Stock." (ISO Building and Personal Property Coverage Form, Section A.1.b). "Stock" is defined under the ISO policy as "merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping." (ISO Building and Personal Property Coverage Form, Section H.2). The Court finds that the turbine fails to meet this definition of "stock" because it was property being held for repair. Therefore, it cannot be afforded coverage under the Business Personal Property coverage section of the ISO policy.

The ISO policy, however, provides for coverage extensions in certain circumstances. It provides that when a coinsurance percentage of 80% or more is shown in the Declarations, coverage may be extended to include the personal property of others in the insured's care, custody or control. (ISO Building and Personal Property Coverage Form, Section A.5.b). Specifically, section A.5.b states:

> You [the insured] may extend the insurance that applies to Your Business Personal Property to apply to:
>
> (1) Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.
>
> (2) Personal property of others in your care, custody or control.
>
> The most we [the insurance company] will pay for loss or damage under this Extension is $2500 at each described premises. Our payment for loss of or damage to personal property of others will only be for

the account of the owner of the property. (ISO Building and Personal Property Coverage Form, Section A.5.b).

Mallay's original property policy contained a coinsurance percentage of 80%, allowing it to receive the benefit of this extension of coverage. (See TCP208–28–501, Texas Standard Policy). The Court finds this extension applicable to the turbine because it was the personal property of others in Mallay's care, custody or control at the time of the damage. As stated under this extension, however, any coverage for the personal property of others in the insured's care, custody or control is limited to $2500.00. Thus the Court finds that the damage to the turbine is covered under the ISO policy coverage extension but that such coverage is limited to a maximum amount of $2500.00.

### IV. Conclusion

For the reasons set forth above, the Court finds that neither the CGL coverage form nor the original property coverage form provides coverage for the damage to the turbine or Dow's alleged consequential economic losses. The Court does find, however, that the ISO form, applicable through the liberalization clause in the original property coverage form, provides coverage for the damage to the turbine up to a maximum amount of $2500.00. Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Motion for Partial Summary Judgment is **DENIED**. Having resolved the main claim regarding the issue of coverage, the Court declines to exercise supplemental jurisdiction over the remaining claims in the case. Accordingly, each and all of Defendant's counterclaims against Plaintiff and claims against Third–Party Defendants are hereby **DISMISSED WITHOUT PREJUDICE** and may be refiled in a state court of competent jurisdiction. The parties are **ORDERED** to bear their own taxable costs and expenses incurred herein to date. The parties are also **ORDERED** to file nothing further on these issues in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the

Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**