**Michael G. BAKER and Cheryl Ann Baker, Plaintiffs-Appellees, Cross-Appellants,**

v.

**WASHINGTON NATIONAL INSURANCE COMPANY, Defendant-Appellant, Cross-Appellee.**

No. 86–4826.

United States Court of Appeals, Fifth Circuit.

Aug. 5, 1987.

Fred Mannino, Stephen G. Peresich, Page, Mannino & Peresich, Biloxi, Miss., for defendant-appellant, cross-appellee.

Raymond L. Brown, Pascagoula, Miss., for amicus curiae.

William C. Walker, Jr., William L. Denton, Denton, Persons, Dornan & Bilbo, Biloxi, Miss., for plaintiffs-appellees, cross-appellants.

Before CLARK, Chief Judge, RANDALL and DAVIS, Circuit Judges.

CLARK, Chief Judge:

We affirm the district court's construction of the meaning of a conversion privilege extended as a part of a group health insurance contract, and its refusal to grant punitive damages.

## I.

While Michael Baker was employed by Biloxi Freezing Company (Biloxi Freezing), he enrolled himself and his dependents in the employer's group life and health plan with Washington National Insurance Company (Washington National). Normal pregnancy benefits were incorporated into the group policy by an amendment, effective on the same date the certificate was issued to the Bakers. The certificate of insurance and the master policy issued to Biloxi Freezing also contained a conversion privilege amendment. That amendment provided:

> The privilege of conversion from the group insurance provided by the group policy to an individual policy of health shall be available to an insured person and/or his dependents under the circumstances specified in Sections A and B below. If proper application is made within the conversion period [31 days immediately following termination of insurance under the group policy] and if appropriate premium is remitted, the company will issue its then current conversion policy to a person entitled to the conversion privilege. The conversion policy shall be issued without further evidence of insurability and the premium shall be applicable to the class of risk to which the persons to be insured belong. The effective date of the conversion policy shall be the day after insurance under the group policy terminates.

Baker and his wife were within the circumstances specified in Sections A and B and were entitled to exercise the conversion privilege.

Michael Baker worked at Biloxi Freezing, submitting claims and receiving benefits for himself and his dependents under the instant policy, until he was terminated by his employer. At the time Michael Baker ceased active work on July 8, 1983, his wife was approximately three months pregnant.

Washington National acknowledged responsibility for the Bakers' claims for pregnancy benefits until July 31. At that time it terminated coverage under the group policy because Michael Baker was no longer eligible for employee coverage. The Bakers made a timely and sufficient tender in an effort to exercise the conversion privilege in anticipation of the continuing expenses of maternity care and delivery of the child, but Washington National advised them that normal maternity benefits would not be covered by its conversion policy.

## II.

The district court concluded that the conversion privilege language quoted above obligated Washington National to offer the Bakers the same coverage for pregnancy expense as was afforded in the group policy. This conclusion was based on the construction of the term "conversion" in *Moore v. John Hancock Mutual Life Insurance Co.*, 436 F.2d 823 (5th Cir.1971), and *Aetna Life Insurance Co. v. Dunken*, 266 U.S. 389, 45 S.Ct. 129, 69 L.Ed. 342 (1924). In the alternative, the court concluded the Bakers' claim for maternity benefits had matured prior to the time their coverage under the group policy was terminated under the authority of *Benefit Trust Life Insurance Co. v. Lee*, 248 Miss. 715, 160 So.2d 909, 916 (1964).

## III.

Washington National contends the policy provision requiring it to issue its "then current conversion policy" was unambiguous and gave it the option to control the type of coverage it wished to offer. Therefore, the court's construction of the policy provision as restricting any conversion policy to the same terms as those contained in the group policy had the effect of writing a new contract for the parties. Washington National would distinguish *Moore* as a life insurance case the outcome of which was driven by the effect of Florida statutes on the language used in the conversion privilege in Moore's policy. It would distinguish *Dunken* as involving a specific contractual undertaking to replace a seven-year term life insurance contract with a twenty-payment life insurance policy. It also maintains that *Moore* and *Dunken* are distinguishable because the original policies in these cases did not continue in effect and

because the contracting parties in both replacement policies were identical to those in each original policy. Finally, Washington National contends that its group policy form was approved by Mississippi insurance regulatory authorities and that the district court's construction would have far-reaching adverse effects on both insurers and insureds. We affirm the judgment of the district court.

## IV.

The contractual commitments in the group health insurance policy issued to Biloxi Freezing were three-sided, not two-sided. The group policy issued to Biloxi Freezing was for the express benefit and coverage of employees such as Baker and his dependents. More significantly, the amendment providing the conversion privilege is a direct undertaking by Washington National to offer an individual policy of insurance to an employee because of his status as an insured under the group policy.

Washington National's commitment to the Bakers in the conversion privilege amendment was set out in broad general language—to issue its then current conversion policy. Neither the form nor the content of the conversion policy which would be issued was identified by attachment, reference or description. The district court looked to precedent to determine whether the term "conversion" had an ordinary or commonly understood meaning. This examination disclosed that in both *Dunken* and *Moore,* courts faced with equally opaque conversion terminology in life insurance policies concluded a bare promise to convert was a promise to continue the coverage provided by the basic contract. In *Dunken,* the Supreme Court refused to allow an intervening change of domicile to confer statutory penalties and attorneys' fees which would not be applicable under the original contract. In *Moore,* this court refused to restart the basic policy's completed period for contestability.

Washington National would distinguish *Moore* because it arose in Florida and its language was governed by the statutes of that state. The *Moore* conversion privi-

lege—which granted the right to obtain an individual policy in "any one of the forms then customarily issued by the Company, except term insurance"—was rescripted from § 627.0415, Florida Statutes Annotated. However, neither the statute nor any Florida rules of construction affected *Moore*'s holding that the ordinary meaning of the right of "conversion" was a right to "continue" the basic coverage in another type of policy. Indeed, the *Moore* court expressly observed

John Hancock could have effectively excluded the risk of suicide from the coverage afforded under any individual policy available under the conversion privilege by the addition to the conversion privilege of express language to that effect. (footnote omitted)

436 F.2d at 830. *Moore* is clear authority for the proposition that, in the absence of any stated restriction, the insurer's use of general language agreeing to convert imports a promise to continue the basic coverage.

■ Washington National's undertaking to issue a conversion policy it called its "then current conversion policy" is an empty promise if it is not tied by common understanding or express language to some definite level of coverage. The district court properly relied on *Moore*'s rule that the bald promise of "conversion" meant "continuation," and on *Dunken*'s reasoning that a subsequent contract made in pursuance of an unrestricted provision of an earlier one is to be regarded as a continuation of the status of the first was not error.

■ We would only add that if such a reasonable construction is not applied, the language "then current conversion policy" at least becomes unclear if not wholly ambiguous in setting the nature and extent of coverage promised to be provided. The Mississippi Supreme Court "recognizes the general principle that in any insurance contract, unclear and ambiguous language will be construed in favor of the insured." *Government Employees Insurance Co. v. Brown,* 446 So.2d 1002, 1006 (Miss.1984). In this event, Mississippi law would operate

to construe the undertaking to afford the insured an option that would allow him to receive the benefits due for the matured pregnancy claim.

Washington National's spectre of chaos in the health insurance industry is overblown. A company can state in its contract that it will offer a specific level of coverage in its conversion policy as easily as it can omit any reference to providing a conversion privilege. It can attach the conversion policy it will issue to the group policy. It can refer to a form of conversion policy on file with the employer or the state insurance authority. It can delineate what particular risks it will cover or exclude in any conversion policy it may issue. All we hold is that if a company includes an undertaking to offer a conversion policy and its promise is no more definite than that it will issue an undisclosed, undefined form of conversion policy, it is bound to furnish at least one that is no less advantageous to the insured than the coverage it agrees to convert.

Because we affirm on the principal ground followed by the district court, there is no reason to reach or rule on the alternative ground that the matured pregnancy claim conferred a right on the Bakers to continue their premiums and maintain their coverage under the group policy through the completion of that claim.

Washington National's construction of its policy provision was not unreasonable. The district court's grant of summary judgment on the issue of bad faith punitive damages was correct. The judgment of the district court was superseded on appeal. Therefore, the failure to follow that judgment is of no consequence.

AFFIRMED.