William A. RAMSEY, Jr. and
Dianne W. Ramsey

v.

The COLONIAL LIFE INSURANCE COMPANY OF AMERICA d/b/a Chubb Lifeamerica.

Civ. A. No. J90–0452(B).

United States District Court, S.D. Mississippi, Jackson Division.

June 9, 1992.

---

James W. Nobles, Jackson, MS, Pat M. Barrett, Jr., Lexington, MS, for plaintiffs.

Robert C. Boyd and Thomas M. Murphree, Jr., Jackson, MS, for defendants.

MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court, pursuant to Rule 56 of the Federal Rules of Civil Proce-

dure, on Plaintiffs' Motion for Summary Judgment. Defendant has responded to the Motion and has filed a Cross–Motion for Summary Judgment. The Court, having considered the Motions and Responses, together with memoranda of authorities and attachments thereto, now renders the following findings of fact and conclusions of law.

## I. FACTS AND PROCEDURAL HISTORY

In October of 1975, Plaintiff Dianne Ramsey began work for Moulden Supply Company, Inc. Dianne Ramsey left Moulden Supply in January of 1980 to work elsewhere, but returned to Moulden Supply as an employee in September of 1983. At the time of her return to Moulden Supply, Dianne Ramsey was offered group insurance coverage through her employer. Although the insurance carrier of the group policy at that time was not Defendant Colonial Life Insurance Company of America, Moulden Supply did change its group policy to Colonial Life on August 1, 1986. At the time that the change to Colonial Life was made, Dianne Ramsey chose to cover herself, her spouse, Plaintiff William A. Ramsey, Jr., and her two children under Colonial Life Group Policy No. 330197. That policy provided a $2,000,000 maximum lifetime limit for medical expenses attributable to any one illness or accident.

On January 31, 1987, William Ramsey sustained a complete fracture of several vertebrae in his neck, resulting in permanent and irreversible quadriplegia. Subsequently, Colonial Life began to pay medical expenses for Mr. Ramsey pursuant to Group Policy No. 330197.

On or about June 23, 1989, Moulden Supply orally notified its employees that it was cancelling Group Policy No. 330197. By letter dated July 31, 1989, Moulden Supply formally notified Colonial Life of its termination of the group policy. By letter dated August 1, 1989, Moulden Supply formally notified its employees that the termination of the policy had become effective. At the time that the policy was terminated on August 1, 1989, Colonial Life had paid medical expenses for Mr. Ramsey in the approximate amount of $275,000.

Subsequent to the termination of Group Policy No. 330197, Dianne Ramsey contacted the Mississippi Department of Insurance and asked them to review the policy. By letter dated August 7, 1989, the Department of Insurance informed Mrs. Ramsey that the policy contained "no provision for continuation of coverage by extension of benefit or right to convert." Thereafter, on August 22, 1989, Colonial Life informed the Department of Insurance that Mr. Ramsey was entitled under the policy to a twelve month extension of benefits for the condition of paralytic syndrome. The record does not reveal that the Ramseys were informed of the Colonial Life letter.

On the advice of counsel, Plaintiffs sought to secure a conversion policy from Colonial Life that would provide the same benefits as had been afforded under the group policy. Accordingly, Plaintiffs executed a medical conversion application on September 5, 1989, and enclosed a check to cover the first premium due under the conversion policy. By way of a letter from Plaintiffs' counsel enclosed with the conversion application, Colonial Life was advised that

> certain plan numbers and a maximum [$20,000] benefit are entered on the application form. These numbers were taken from the information printed on other pages of your application form as being the maximum benefits and coverage available. However, please consider that application is hereby being made for the same benefits and continuation of the basic level of coverage as provided to the Ramseys under policy number 330197, as required in the Fifth Circuit case of *Baker v. Washington National Insurance Company*, 823 F.2d 156 ( [5th Cir.]1987)....

Although the record is unclear on this point, all parties agree that the conversion policy with its $20,000 maximum lifetime medical benefits limit went into effect sometime following the termination of the group policy. Claims for Mr. Ramsey's medical expenses were submitted to Colonial Life during the period following August 1, 1989, but no claims were paid. Specifically, with regard to claims submitted during the twelve

month period following the termination of the group policy, claims were denied by Colonial Life on the following basis:

> The policy does not allow benefits for services rendered after the group coverage terminates unless the patient was totally disabled from the date of termination. Since coverage terminated on 07/31/89 and the above services were rendered after that date, no benefits are payable.

> If disability exists, send us a doctor's statement and further consideration will be given. We suggest that you contact your employer concerning extension of benefits or conversion to an individual policy.

On August 9, 1990, the Ramseys filed a lawsuit against Colonial Life in the Circuit Court of Hinds County, Mississippi, alleging that Colonial Life had refused payment of claims without an arguable reason, had committed the tort of reckless disregard of Plaintiffs' rights to benefits under the group policy, and had committed gross negligence with the intent to deceive by inducing Plaintiffs to convert to a policy with substantially lower limits than those available under the original group policy. By way of relief, Plaintiffs asked for a declaratory judgment that the group policy was still in force and effect as to claims related to Mr. Ramsey's quadriplegia up to the maximum limit of $2,000,000. In the alternative, Plaintiffs sought a judgment that Colonial Life was required to provide a conversion policy with the same limits and rates as existed under the group plan. Finally, Plaintiffs asserted a right to compensatory and punitive damages, together with pre-judgment interest, post-judgment interest, costs, and attorney's fees.

Colonial Life subsequently removed the state action to this Court. At some point subsequent to removal, Colonial Life tendered payment for all medical expenses incurred by Mr. Ramsey during the twelve month period following termination of Group Policy No. 330197.

## II. CONCLUSIONS OF LAW

Rule 56 of the Federal Rules of Civil Procedure states in relevant part that summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also Moore v. Mississippi Valley State University,* 871 F.2d 545, 549 (5th Cir.1989); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122 (5th Cir.1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. However, the movant need not support the motion with materials that negate the opponent's claim. *Id.* As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. *Id.* at 323–24, 106 S.Ct. at 2552–53. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. The district court, therefore, must not "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). Summary judgment is improper merely where the court believes it unlikely that the non-moving party will prevail at trial. *National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962).

## A. Preemption of State Law Claims Under ERISA

Initially, the Court must determine which body of substantive law applies in this case. Although Plaintiffs have cast the Complaint in terms of state law contract and tort claims, Defendant urges the Court that federal law is controlling in this case because all claims relate to an employee benefit plan within the purview of the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*

ERISA defines an "employee welfare benefit plan" as

> ... any plan, fund or program which was heretofore or is hereafter established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). In construing the statutory language, an employee welfare benefit plan has routinely been found to exist

> if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedure for receiving benefits. To be an employee welfare benefit plan, the intended benefits must be health, accident, death, disability, unemployment or [certain other specified] benefits[;] ... the intended beneficiaries must include union members, employees, former employees or their beneficiaries; and an employer or employee organization, or both, and not individual employees or entrepreneurial businesses, must establish and maintain the plan, fund, or program.

*Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). The *Donovan* analysis has been approved by the United States Court of Appeals for the Fifth Circuit, *see Memorial Hospital System v. Northbrook Life Insurance Company,* 904 F.2d 236, 240 (5th Cir. 1990), and has been applied by this Court. *See Foxworth v. Durham Life Insurance Company,* 745 F.Supp. 1227, 1229 (S.D.Miss. 1990).

The Colonial Life policy at issue in this proceeding clearly qualifies as an ERISA plan pursuant to *Donovan.* The intended benefits are contained in the policy which was provided to Moulden Supply employees, the class of beneficiaries under the policy are Moulden Supply employees and their dependents, Moulden Supply and its employees each paid a percentage of the premium to finance the policy, and Moulden Supply had established a procedure for receiving benefits through a designated insurance clerk.

Because Plaintiffs' Complaint asserts only claims related to an employee welfare benefit plan that qualifies as an ERISA plan, ERISA is the exclusive source of substantive law to be applied in this matter, and all of Plaintiff's state law claims are effectively preempted by federal law. *See* 29 U.S.C. § 1144; *see also Metropolitan Life Insurance Company v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Davis v. Time Insurance Company,* 698 F.Supp. 1317 (S.D.Miss.1988). Accordingly, all of the state law claims asserted in Plaintiffs' Complaint must be dismissed and the state law claims which Plaintiffs attempt to assert are "recharacterized" as claims for benefits under the provisions of ERISA.

> As the Supreme Court recently declared in *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), common-law contract and tort claims based upon laws of general application, that is, not specifically related to insurance or employee severance or discrimination, are preempted by ERISA ... to the extent that they relate to an employee benefit plan. Moreover, when beneficiaries bring such claims to recover benefits from a covered plan, those claims fall under ERISA's 29 U.S.C. § 1132(a)(1)(B), which provides an exclusive federal cause of action for the resolution of such claims.... Thus, ... in addition to preempting the state-law claims, ERISA's preemptive and civil enforcement provisions operate to "recharacterize" such

claims into actions arising under federal law.

*Degan v. Ford Motor Company,* 869 F.2d 889, 893 (5th Cir.1989). With regard to several of the state law claims asserted by Plaintiffs, however, the Court notes that preemption under ERISA requires complete dismissal of the claims. Plaintiffs do not dispute that all benefits under the policy personal to Dianne Ramsey have been paid in full. Accordingly, she is no longer able to maintain a cause of action for benefits under ERISA, *see* 29 U.S.C. § 1132(a)(1)(B), and all claims asserted by Plaintiff Dianne Ramsey are hereby dismissed. Further, the Court notes that Plaintiffs have asserted a bad faith failure to pay claim and have asked the remedy of punitive damages. While such a claim and the remedy of punitive damages are available under Mississippi law, such a claim cannot be maintained under ERISA and must accordingly be dismissed. *See Pilot Life Insurance Company,* 481 U.S. at 55–57, 107 S.Ct. at 1557–58. In light of these rulings, the only issues left for decision are Plaintiff William A. Ramsey's right to benefits under the policy, his right to a conversion policy, and his right to recover attorney's fees.

### B. Coverage Issues

■ The primary issues of law presented by the instant motions concern the scope of coverage afforded under Group Policy No. 330197. In construing the policy provisions relevant to the issue of coverage, the Court is mindful that the interpretation of policies falling under ERISA is governed by federal common law rather than state law. The United States Supreme Court has not only declared that ERISA preempts all state law claims, but has also declared that it was the intent of Congress in passing ERISA to have federal courts develop federal common law to regulate and enforce ERISA. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). The United States Court of Appeals for the Fifth Circuit has recognized that the development of a body of federal common law is necessary under ERISA to promote the statutory concern "for uniformity in the law governing employee benefit plans," *In re*

*Heci Exploration Company, Inc.,* 862 F.2d 513, 521 (5th Cir.1988) and "to prevent the development of a competing line of cases decided under state law." *Heci,* 862 F.2d at 521.

Federal courts have developed certain guidelines for "creating" federal common law in interpreting ERISA plans.

> We start by restating the method of the statute: the benefit provisions of an ERISA-regulated group life insurance policy must be interpreted under principles of federal substantive law. [citations omitted]. We think it clear that the "federal common law of rights and obligations," [citation omitted], while still in formation, must embody common sense cannons of contract interpretation. Notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results or to convey delitescent nuances the contracting parties neither intended not imagined. To the exact contrary, straightforward language in an ERISA-regulated insurance policy should be given its natural meaning.

*Burnham v. Guardian Life Insurance Company of America,* 873 F.2d 486, 489 (1st Cir.1989).

Other federal courts have derived rules of interpretation directly from the statutory requirements themselves. Noting that 29 U.S.C. § 1022(a)(1) requires written plan descriptions which are "calculated to be understood by the average participant," the court in *Brewer v. Lincoln National Life Insurance Company,* 921 F.2d 150, 154 (8th Cir. 1990), determined that the requirement of a written plan "provides a source from which we may fashion a federal common law rule: the terms [of a plan/policy] should be accorded their ordinary, and not specialized, meanings." *Brewer,* 921 F.2d at 154; *see also Evans v. Safeco Life Insurance Company,* 916 F.2d 1437, 1440 (9th Cir.1990).

### (1) Accident v. Expenses Policies

William Ramsey contends that, because the accident rendering him a quadriplegic occurred while Group Policy No. 330197 was in effect, the plan provides coverage up to

the $2,000,000 policy limitation for all medical expenses related to the quadriplegia regardless of whether the plan was still in effect at the time the medical services were actually rendered. Alternatively stated, Ramsey contends that medical expenses related to his quadriplegia are covered by the policy up to the $2,000,000 limitation because such expenses were "incurred" at the moment he was injured and the policy was in effect at that time. Conversely, Defendant argues that, irrespective of when the accident occurred, Group Policy No. 330197 provided coverage for medical expenses related to Mr. Ramsey's quadriplegia only if the policy was still in effect at the time that medical services were provided to Ramsey because medical expenses cannot be "incurred" until the services are actually rendered.

■ Defendant asserts that the following provisions of Group Plan No. 330197 are relevant to the issue of coverage for medical expenses arising after the termination of the policy:

## SECTION S

### MEDICAL BENEFITS

To receive a benefit, you must have *covered medical expenses* that exceed the deductible.

. . . . .

### COVERED MEDICAL EXPENSES

These are the *usual and customary charges* for services and supplies which are

a. ordered by a physician;

b. necessary for the treatment of an illness or injury; *and*

c. *incurred while insured.*

. . . . .

### SECTION W—GENERAL MEDICAL/DENTAL PROVISIONS DEFINITIONS AND CONVERSION PRIVILEGES

### USUAL AND CUSTOMARY CHARGES

Usual charges are those normally charged by the provider for the specific medical care or service *rendered.*

Customary charges are those most often made by providers for similar services in the same geographic area.

(emphasis added). Applying these provisions to the facts of this case, the Court finds that Group Policy No. 330197 did not provide William Ramsey with coverage for medical expenses related to his quadriplegia beyond the date that the policy was terminated other than for that period of time beyond termination of the policy where an extension of benefits or a conversion policy may have offered medical coverage to Mr. Ramsey. The medical benefits section of the Colonial Life policy provides that, "to receive a benefit, you must have *covered medical expenses....*" (emphasis added). Covered medical expenses are defined as "the *usual and customary charges* for services and supplies....*" (emphasis added). Usual and customary charges are defined as "those normally charged by the provider for the specific medical care or service *rendered.*" (emphasis added). Accordingly, the policy, by its very terms, provides that a specific medical care or service must be "rendered" before a benefit may be received under the policy. The Court therefore finds that no genuine issue of material fact exists as to Ramsey's claim for benefits under these provisions of the policy and that Defendant is entitled to judgment on this issue as a matter of law.

### (2) Extension of Benefits

■ Ramsey next contends that he is entitled to continuing medical coverage under the extension of medical benefits clause of Group Policy No. 330197. In this regard, the Court notes that the policy provides as follows:

### SECTION C—EFFECTIVE DATE AND TERMINATION OF INSURANCE

### TERMINATION OF INSURANCE
Your insurance will end when:

. . . . .

c. premium payments stop;

d. the group policy terminates.

Dependents insurance will end when:

. . . . .

c. your insurance ends, unless by death.

. . . . .

### EXTENSION OF MEDICAL BENEFITS

If you or a dependent are totally disabled when premium payment stops, medical benefits will be continued, until the earlier of:

a. 12 months from the day you became disabled;

b. the date total and continuous disability ends;

c. you or the dependent are insured for similar medical benefits under another group plan....

In applying the extension of benefits clause to the facts of this case, the Court notes that the parties agree that Ramsey was totally disabled at the time that premium payments stopped under the group policy. The parties further agree that Ramsey remains totally and continuously disabled to date, the condition set forth in subsection b. to the extension of benefits clause, and that Ramsey has not secured medical benefits under another group insurance plan, the condition set forth in subsection c. to the clause. The parties do dispute, however, the effect that subsection a. of the extension of benefits clause has on extended medical coverage for Ramsey.

Defendant contends that, in applying the extension of benefits clause to a particular case, each of the three subsections should be analyzed under the facts of the case and a date assigned to each of the subsections based upon those particular facts. The earliest of these three dates would then be the date at which any extension of benefits would terminate. Applying this analysis to the instant case, Defendant urges that, because subsections b. and c. of the extension clause continue to be applicable to date, and because subsection a. would produce a date of January 31, 1988, that being twelve months from the January 31, 1987, date on which Ramsey became disabled, any extension of benefits due to Ramsey terminated on January 31, 1988. Defendant maintains that this construction of the clause is proper although the policy itself did not actually terminate until July 31, 1989, eighteen months past the date on which Defendant insists that Plaintiff's right to an extension of benefits expired.

Not surprisingly, Plaintiff maintains that Defendant's construction of the extension of benefits clause is improper and that the clause must be applied in a manner that gives a consistent meaning to the whole clause, rather than focusing merely on the subsections to the clause themselves. In this regard, Plaintiff notes that the clause expressly states in mandatory language that medical benefits "will be continued" if an insured is totally disabled at the time that the policy is terminated. Plaintiff contends that, once the mandatory nature of the extension of benefits clause is recognized from its own express language, subsections a., b., and c. can be applied only in a manner that is consistent with that language. Accordingly, Plaintiff argues that, while it would be proper to apply the extension of benefits clause in such a way that benefits would terminate once the event described in subsection a., b., or c. occurred following the date that the extension of benefits clause went into effect, it would be improper to apply the subsection in a manner that would allow the mandatory extension of benefits to be cut off prior to the time at which the policy itself is terminated, which is the time the extension clause logically should go into effect. Applying this analysis to the instant case, Plaintiff urges that, because subsection a. of the extension clause would produce a termination date for the extension of benefits clause before the policy itself was terminated, subsection a. is not applicable and only subsections b. and c. can be used to terminate Plaintiff's right to an extension of benefits.

The Court, having considered the arguments advanced by both parties and being mindful of its duty to give "straightforward language in an ERISA-regulated insurance policy ... its natural meaning," *Burnham*, 873 F.2d at 489, concludes that Plaintiff is entitled to continued coverage under Group Policy No. 330197 through the extension of benefits clause. The extensions of benefits clause mandates that medical benefits *"will be continued"* (emphasis added) if an insured

is totally disabled at the time that the policy is terminated. Accordingly, subsection a., b., and c. cannot be applied in a manner that conflicts with the mandatory extension of benefits envisioned by the clause as a whole. The Court therefore finds that, because the application of subsection a. in the manner contemplated by Defendant would terminate Plaintiff's right to an extension of benefits before the policy itself had terminated and because such a result would conflict with the mandatory extension of benefits required by the clause as a whole, subsection a. is non-applicable in the instant matter, and Plaintiff is entitled to an extension of benefits until the requirements of subsections b. or c. are met, or the policy limit of $2,000,000 is exhausted, whichever occurs first. Because neither subsection b. nor c. can presently be applied to terminate Plaintiff's medical benefits under the extension clause and because the policy limit of $2,000,000 has not been exhausted, the Court finds that no genuine issue of material fact exists as to Plaintiff's entitlement to continued medical coverage under the policy and that Plaintiff is entitled, as a matter of law, to a judgment declaring his rights to continued medical coverage under Group Policy No. 330197 for the condition of quadriplegia until such time as the requirements of either subsection b. or c. of the extensions of benefits clause are met, or the policy limit of $2,000,000 is exhausted, whichever occurs first.

In light of this ruling, the Court further finds that, because coverage for Ramsey was available under the extension of benefits clause from the date of termination of the group policy, it was not necessary for Ramsey to pay premiums on a conversion policy in order to secure insurance coverage from Defendant for the period immediately following termination of the group policy. Accordingly, the Court finds that no genuine issue of material fact exists with regard to Plaintiff's entitlement to have the $1,400 which he had paid in premiums on the conversion policy returned and a judgment should be entered in favor of Plaintiff for that amount as a matter of law.[1]

## C. Conversion Rights

█ Plaintiff has asked this Court, in the event that the Court finds Plaintiff is not entitled to coverage under Group Policy No. 330197, to consider Plaintiff's rights to a conversion policy providing the same coverage and premium payments as that afforded Plaintiff under the group plan. Although the Court has found Plaintiff to be entitled to coverage under group plan and therefore has no need to address an argument in the alternative, it will address the issue since it is clear Defendant has complied with its duty under federal law, see 29 U.S.C. §§ 1161–1168, to offer conversion rights to its insured. In the case of *Baker v. Washington National Insurance Co.*, 823 F.2d 156, 159 (5th Cir. 1987), the United States Court of Appeals for the Fifth Circuit held that where "a company includes an undertaking to offer a conversion policy [in its contract of insurance] and its promise is no more definite than it will issue an undisclosed, undefined form of conversion policy, it is bound to furnish at least one that is not less advantageous to the insured than the coverage it agrees to convert." Although the court declined to adopt a standard method for insurance companies to utilize in apprising insureds of their conversion rights, the court did note that companies could avoid the harsh result of *Baker* by ensuring that conversion coverages were available for inspection by the prospective insured. *Baker,* 823 F.2d at 159. In the instant matter, Defendant has produced evidence which establishes that it complied with *Baker* by having a copy of the conversion policy application which showed available coverages and premiums on file with the employer, Moulden

1. With regard to the relief available to Ramsey on the extension of benefits clause claim, the Court notes that the Complaint filed in this matter does not request payment of any prior medical expenses incurred by Ramsey. Further, the evidence placed before the Court in support of Plaintiff's Motion for Summary Judgment does not contain any unpaid medical bills which Ramsey may have incurred to date. As the Court has previously noted, *supra,* p. 1106, Defendant has tendered payment for all medical expenses incurred by Ramsey during the twelve month period following termination of Group Policy No. 330197. Accordingly, the judgment entered in this cause will not include an award for medical expenses previously incurred, as no such relief was requested, nor is it supported by the evidence in this case.

Supply. Accordingly, the Court finds that no genuine issue of material fact exists with regard to Plaintiff's conversion claim and that Defendant is entitled to judgment on the claim as a matter of law.

### D. Attorney's Fees

 Finally, Plaintiff has requested an award of attorney's fees should he prevail on the merits of this case. In *Pitts v. American Security Life Insurance Company*, 931 F.2d 351, 358 (5th Cir.1991), the factors to be considered when awarding attorneys' fees in ERISA cases were set out as follows:

(1) the degree of the opposing party's culpability or bad faith;

(2) the ability of the opposing party to satisfy an award of attorney's fees;

(3) whether an award of attorney's fees would deter other persons who will be acting under similar circumstances;

(4) whether the party seeking attorney's fees sought to benefit all participants in an ERISA plan or to resolve a significant legal question under ERISA; and

(5) the relative merits of the parties' positions.

In regard to these factors, the Court finds that the Defendant has contested coverage on genuine legal issues and is not guilty of bad faith. The Court further finds that Defendant could pay attorneys fees if required, but an award of attorney's fees would not act as a deterrent to others because these same circumstances are unlikely to re-occur. Additionally, Plaintiffs suit did not attempt to benefit other ERISA participants, nor did it resolve any significant legal issue under ERISA. This case involved an unusual factual situation relative to the language of the policy in question, and Defendant's position on the merits was relatively strong. Accordingly, the Court concludes that the instant matter is not an appropriate ERISA case in which to make an award of attorney's fees. Accordingly, the Court finds that no genuine issue of material fact exists as to Plaintiff's claim for attorney's fees and that judgment should be entered for Defendant on such claim as a matter of law.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment be granted as to the claim asserted by Plaintiff William A. Ramsey, Jr., under the extension of benefits clause of Group Policy No. 330197.

IT IS FURTHER ORDERED that Defendant's Cross–Motion for Summary Judgment be granted as to all other claims asserted in this lawsuit.

IT IS FURTHER ORDERED that a Final Judgment consistent with this Memorandum Opinion and Order be entered in this cause.

SO ORDERED.